**STATE of Minnesota, Respondent,**

v.

**James R. DAVIDSON, Appellant.**

No. C6–82–1173.

Supreme Court of Minnesota.

July 6, 1984.

C. Paul Jones, State Public Defender, Mary C.L. Cade, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Henn. County Atty., Minneapolis, for respondent.

WAHL, Justice.

Defendant was found guilty by a district court jury of a charge of being a felon in possession of a handgun, Minn.Stat. § 624.-713, subds. 1(b) and 2 (1982). The trial court sentenced defendant to 16 months in prison but stayed execution of the sentence, placing defendant on probation for 3 years, the first 6 months to be served in jail. On this appeal from judgment of conviction defendant contends (1) that his conviction should be reversed outright on the ground that the evidence that he possessed the gun in question was legally insufficient, or (2) that he should be given a new trial because the trial court prejudicially erred (a) in refusing to let him stipulate to his prior conviction in order to prevent the jury from learning that he was a felon, and (b) in ordering defense counsel not to comment on the state's failure to present any fingerprint evidence connecting defendant to the gun. We affirm.

Around midnight on September 4, 1981, Officer Michael Quinn of the street crimes unit of the Minneapolis Police Department was patrolling Hennepin Avenue in downtown Minneapolis in a marked police van. As he pulled off 11th Street into an alley behind the Carousel Bar, which is at 11th and Hennepin, he saw a man, later identified as defendant, standing by a car in the lot there. As Quinn drove toward the car, defendant started walking toward the back entrance to the bar. When defendant saw Quinn, he quickened his pace and appeared to stick something inside his pants in a furtive way. Quinn quickly drove around to the front of the bar, where he saw defendant come out. When defendant saw Quinn again, he turned and quickly reentered the bar. Suspecting that defendant was hiding narcotics or maybe a weapon, Quinn described him and the situation to Officer Dorothy Veldey, who was in a marked squad car with another officer. Veldey immediately drove around to the back, where she saw defendant walking across the lot by a brown van toward the rear of the bar. After seeing them, defendant briefly ducked down by the van, then got up and resumed walking. Veldey and her partner stopped him and notified Quinn. Quinn came back and frisked defendant, finding 62 .22-caliber long rifle rounds and $460 in cash in his pocket. Quinn asked defendant if he had a gun but he did not reply. Veldey checked the area near the brown van, where defendant had briefly ducked down, and she found an empty .22-caliber revolver and a cylinder next to it. She looked for the other parts (the rod that holds the cylinder in place and possibly a spring) but did not find them.

At the omnibus hearing defense counsel stated that defendant was going to waive his right to testify. Citing *State v. Moore*, 274 N.W.2d 505, 507 (Minn.1979), defense counsel also said that defendant wanted to stipulate that he had a prior conviction of a crime of violence in order to prevent the jury from learning that he was a convicted felon. Defendant's conviction was arson in the first degree from Florida. The trial court denied the motion, stating that it was not aware of any authority that would permit it to remove one of the elements of the crime from the jury's consideration. The court stated, however, that it would be willing to keep from the jury the precise nature of defendant's prior conviction, stating simply that defendant was convicted of a felony and that it was a crime of violence. Defense counsel decided that it would be less prejudicial to inform the jury that the prior crime was arson in the first degree, and the jury was so informed.

During his closing argument defense counsel began to make an argument as follows relating to the state's failure to produce evidence that the gun was dusted for fingerprints:

> And isn't there in this case another rational conclusion pointing towards the fact that he didn't possess the gun? And the one thing we don't have in this case,

we don't know if it was done or if it wasn't done, but the one thing that would have clinched this case—

At that point the prosecutor objected and asked for permission to approach the bench. The following discussion then occurred:

[Defense Counsel]: The prosecutor has objected in anticipation of an argument that I was about to make that the State has the burden of proving the Defendant guilty beyond a reasonable doubt. And I intended to argue that in this case the State did not produce any evidence concerning whether or not fingerprints were found on the gun or whether or not the fingerprint examination was even performed, and I intended to argue that, either that there were no fingerprints found on the gun or that the police never bothered to fingerprint the gun, and therefore the State did not provide the jury with evidence that they might have and therefore they haven't done everything they could to meet their burden of proof.

[Prosecutor]: The State's objection is based on the fact that defense counsel would attempt to argue evidence and facts that are not in this trial, and that he would be asking the jury, in effect to speculate, and therefore it's improper argument.

THE COURT: The objection has been sustained.

■ 1. Defendant's first contention, that the evidence of his guilt was legally insufficient, is without merit. The totality of the evidence clearly and sufficiently connected him to the gun. That testimony included (a) Officer Quinn's testimony about defendant's sticking something inside of his belt or pants and about defendant's obvious attempts to evade Quinn, (b) Officer Veldey's testimony about defendant's ducking down by the brown van and her testimony about finding the gun there, and (c) the evidence that the gun was a .22-caliber revolver and that defendant had 62 .22-caliber bullets in his pocket.

2. (a) Defendant's first claim of trial error concerns the trial court's refusal to accept the stipulation that defendant had a prior felony conviction and thus remove that element of the offense from the jury.

In *State v. Wiley*, 295 Minn. 411, 421, 205 N.W.2d 667, 675 (1973), we stated the general rule that a criminal defendant's judicial admission or offer to stipulate did not necessarily take away the state's right to offer evidence on a point but that "[c]ases may arise where unduly prejudicial evidence, which is without relevance beyond the defendant's judicial admission, should not be received." 205 N.W.2d at 675. The reason for the general rule is that a defendant should not be able to unilaterally control the issue of the need for relevant evidence by offering to stipulate, "particularly where the evidence sought to be excluded would bear in any way upon any other issues not covered by the stipulation." 2 D. Louisell & C. Mueller, Federal Evidence § 126 at 27 (1978).

In *State v. Moore*, 274 N.W.2d 505 (Minn. 1979), we dealt with some of the issues presented when a defendant is tried on two or more different charges and one is the charge of being a felon in possession of a weapon. In a footnote we stated:

In a prosecution under [the statute making it a felony for a felon to possess a pistol] a stipulation might be a way to keep the evidence of the prior conviction from the jury, evidence which potentially could influence the jury's determination of the possession issue. In this case, of course, there is the additional problem of the evidence possibly influencing the jury's determination of the other charges.

274 N.W.2d at 507, n. 4. In the instant case defendant's counsel quoted this language to the trial court in support of his motion to keep the jury from learning that defendant had a prior record. The trial court nonetheless concluded that it had no authority to grant the motion.

The state, in its brief, relies on language in *State v. Hudson*, 281 N.W.2d 870 (Minn. 1979). In *Hudson*, the defendant was

charged with aggravated robbery and with being a felon in possession of a pistol. Since the defendant did not move for severance, he forfeited the right to complain on appeal about the failure of the trial court to sever the offenses for trial. However, we had before us the issue of whether the trial court should have accepted the defendant's offer to stipulate in order to keep the prior offense from the jury. We interpreted the defendant's offer to stipulate as an attempt to prevent the jury only from knowing what his prior convictions were for, not the fact that he was a convicted felon. Thus, we stated:

> Although defendant cannot complain that the jury knew he had prior convictions when they were considering the robbery charge because of his failure to move for severance, had his stipulation been accepted, the jury would not have known what crimes his prior conviction[s] involved.

281 N.W.2d at 873. We proceeded to state that "While the trial court might have accepted the stipulation, we find no abuse of discretion in its refusal to do so." We noted, in addition, that "even if the stipulation had been accepted, the jury would have learned of 'other crimes' defendant allegedly committed [shortly] before this robbery." 281 N.W.2d at 873.

In *State v. Woelm*, 317 N.W.2d 717 (Minn.1982), the defendant was charged with engaging in prostitution, a gross misdemeanor under Minn.Stat. § 609.324, subd. 3 (1982), by virtue of the fact that the conduct occurred within 2 years of a previous conviction of prostitution. The issue on appeal was whether the trial court prejudicially erred in admitting *Spreigl* evidence concerning the details of the prior conviction. In our opinion we cited the *Moore* case and stated that "Defendant did not, as she might have, try to keep from the jury the fact that she had previously been convicted of prostitution." 317 N.W.2d at 718. We then proceeded to discuss the *Spreigl* evidence. Other cases containing approving references to the language in the *Moore* case include *State v. Loyd*, 321 N.W.2d 901 (Minn.1982), and

*State v. Abraham*, 338 N.W.2d 264 (Minn. 1983).

■ Minn.R.Evid. 404(b) deals with the admission of other-crime evidence to prove relevant facts distinct from the general propensity of the accused to commit crimes. Rule 403 is the general balancing rule that trial courts must follow in deciding whether to admit relevant evidence that carries with it a danger of unfair prejudice. We believe that generally in a prosecution for being a felon in possession of a weapon the defendant should be permitted to remove the issue of whether he is a convicted felon by stipulating to that fact. In the vast majority of such cases the potential of the evidence for unfair prejudice clearly outweighs its probative value. However, the door should be left open so that in appropriate cases where the probative value of the evidence outweighs its potential for unfair prejudice, the evidence may be admitted. One such case might be where the facts underlying the prior conviction are relevant to some disputed issue, making the evidence admissible under Rule 404(b). Prior convictions would still be useable under Minn.R.Evid. 609 to impeach the defendant if he testified.

In this case the defendant's previous conviction of arson had very little relevance to the issue of possession; at best, it is possible that the fact that he was a felon might conceivably explain why he acted so suspiciously when he saw the police and why he wanted to avoid being caught with the gun. Any limited relevance of the evidence to other issues was clearly outweighed by its potential for unfair prejudice, that is, the potential of the evidence for convincing the jury to find defendant guilty for the wrong reason.

■ The trial court concluded that it had no authority to grant defendant's motion, even though defense counsel cited the *Moore* case. As we have indicated, the correct approach under the Rules of Evidence in a case such as this one is to compare the potential of the evidence for unfair prejudice with the relevance of the

evidence to issues other than the issue to which the stipulation relates. In this case we believe that the potential of the evidence for unfair prejudice clearly outweighed the relevance, if any, that the evidence had to other issues. The court should have granted the defendant's motion and should have instructed the jury to the effect that defendant had stipulated that under Minnesota law he was not entitled to possess a pistol and that therefore the jury should direct its attention to the issue of whether or not the state had established beyond a reasonable doubt that he possessed the pistol, either actually or constructively. The error in this case, however, was not so prejudical as to require reversal.

(b) Defendant's other claim of prejudicial trial error relates to the trial court's sustaining the prosecutor's objection to defense counsel's proposed argument about the state's failure to produce any evidence about whether the gun was dusted for fingerprints.

■ In closing argument to the jury defense counsel, like the prosecutor, may argue all reasonable inferences from the evidence in the record, but cannot intentionally misstate the evidence or mislead the jury as to the inferences it may draw. ABA Standards Relating to the Defense Function § 7.8 (1979). In *State v. Villalon*, 305 Minn. 547, 234 N.W.2d 189 (1975), we stated that the trial court may refuse to let defense counsel comment on the absence of a witness—*e.g.*, a government informer—if the circumstances do not give rise to the inference that his testimony would have been unfavorable to the state. In *State v. Yaedke*, 308 Minn. 345, 242 N.W.2d 601 (1976), we stated in a footnote that under the circumstances of that case permitting the defendant to comment on the prosecution's failure to call a government informant and an unavailable witness gave the defendant an unwarranted advantage. In *State v. Swain*, 269 N.W.2d 707 (Minn. 1978), we ruled that the trial court did not abuse its discretion in ordering defense counsel not to comment on the prosecutor's failure to call a witness who was equally available to both sides and who would have added irrelevant issues to the trial.

Defendant relies on *Eley v. State*, 288 Md. 548, 419 A.2d 384 (1980), which held that it was reversible error to preclude the defense from arguing an adverse inference from the state's failure to offer fingerprint evidence (or an explanation for its absence) with respect to an escape vehicle allegedly used by the defendant. However, as the state points out and defendant concedes, there are numerous other cases precluding this type of argument.

■ In a typical case the prosecutor will elicit a testimonial explanation from the police as to the absence of fingerprint evidence (*e.g.*, that there were no useable prints or that it did not make sense to dust for prints because the surface was a bad one). When that does not happen, defense counsel usually will elicit evidence about the lack of prints. In either case, defense counsel may comment in closing argument on the fact that there is no fingerprint evidence connecting the defendant to the crime.

The difference in this case is that neither the prosecutor nor defense counsel questioned the police as to whether the gun was dusted and any prints found, or, if not, why it was not done. Defense counsel wanted to argue that there were no fingerprints found on the gun or that the police never bothered to dust the gun and that therefore the state had not done all it could to meet the burden of proof. The state argued that this comment was not justified by the record, which was silent on the subject. On appeal defendant admits that the record was silent, but argues that he should not be required to ask the police about fingerprints and possibly elicit evidence damaging to the defendant. The state responds that since we have full pretrial discovery in this state, the defense counsel can determine in advance of trial whether prints were looked for or found and that therefore a comment of this sort should not be permitted when the record is silent.

Bearing in mind that the state's failure to produce the evidence did not necessarily support the inference defendant wanted to jury to draw; that the comment could have potentially confused the jury; that the prosecutor could not have responded to the comment; that a defense counsel is not required to ask a question blindly in order to try to build a record to justify such a comment in closing argument; and that the court's allowing the comment would have made no difference in the verdict, we conclude that the trial court did not abuse its discretion in ruling as it did. This holding is not inconsistent with our general view that defense counsel must be given considerable leeway in in closing argument.

Affirmed.